NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 17a0623n.06

Case No. 17-1530

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Nov 09, 2017 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| LATIA M. WILLIAMS, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: DAUGHTREY, MOORE, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Latia Williams helped a group of individuals file fraudulent tax returns. Some of the proceeds of the fraud, about $238,000, went into her own bank account or were mailed to her home. When law enforcement uncovered the scheme, Williams helped to conceal the evidence. She pleaded guilty to conspiring to defraud the federal government. On appeal, she argues that the district court's decision to impose an 18-month prison sentence was substantively unreasonable. We disagree and affirm.

In 2011, Latia Williams asked Derrick Gibson to prepare a "false and fraudulent income tax return" for her. R. 856 at 3. The scheme went beyond falsifying data in Williams' individual tax submissions. It included stealing personal identities, filing returns falsely

claiming the Earned Income Tax Credit, and distributing illicit refunds—totaling approximately $16 million—to his associates.

For her part, Williams' involvement went beyond soliciting Gibson's help in preparing and submitting fraudulent returns. On May 9, 2012, after Gibson was arrested on unrelated charges, Williams and several others, including her husband and son, went to Gibson's home. They removed evidence of the scheme, including "copies of federal income tax returns, computers used to file tax returns, and notes and ledgers used to organize and track tax refunds." R. 1111 at 11–12. The next day, Williams spoke with Gibson over the phone. She confirmed that they had moved "whatever need[ed] to be moved . . . out of the vicinity." *Id.* at 12. And she agreed to remove Gibson's Cadillac from the home after he said that "detectives kept asking about" it. *Id.* On May 10, 2012, officers executed a warrant at Gibson's home only to find that all the evidence was gone.

Gibson continued to file false tax returns until law enforcement arrested him for his role in the conspiracy in 2016. By that time, Williams had obtained $238,678 in fraudulent income tax refunds through her dealings with Gibson.

A grand jury indicted Williams and thirty-three others for "conspir[ing] to defraud the United States" government in violation of 18 U.S.C. § 286. Williams pleaded guilty. As part of the plea agreement, she admitted to participating in the scheme and removing evidence from Gibson's home to impede the government's investigation.

The pre-sentence report assigned Williams an offense level of 18 and a criminal history category of I, yielding a guidelines range of 27 to 33 months in prison. Williams objected. She claimed that the guidelines range should be 18 to 24 months because she had accepted responsibility, which decreased her total offense level from 18 to 15. The district court noted it

was "a close issue" but granted Williams "the benefit of the doubt" and awarded the three-point reduction. R. 1217 at 7. After listening to statements from Williams and her counsel, the court sentenced her to 18 months in prison. She appeals the sentence.

Williams does not argue that her sentence is procedurally unreasonable. She accepts that the district court properly calculated her guidelines range, treated the guidelines as advisory, consulted the factors listed in 18 U.S.C. § 3553(a), relied only on uncontroverted facts, and gave an explanation for its sentence. *See Gall v. United States*, 552 U.S. 38, 51 (2007).

Williams instead argues that her sentence is substantively unreasonable. We review such claims for an abuse of discretion and presume that a within-guidelines sentence is reasonable. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).

In pressing this claim, Williams argues that the district court did not sufficiently account for "the need to avoid unwarranted sentencing disparities" under § 3553(a)(6). In support, she notes that she received a prison sentence while some of her co-defendants received probation. But because § 3553(a)(6) "concerns *national* disparities," the district court was "not required to consider disparities between codefendants." *United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008).

Even if that were not the case, Williams' argument fails on its own terms. It has long been understood that parity involves treating like things alike, and unlike things unalike. None of these co-defendants was similarly situated to Williams. Neither Stephanie Baker nor Rashall Ford obstructed justice. Prentis Gibson caused only $6,696 in loss and pleaded guilty to a different offense. *See* U.S.S.G. § 2T1.1.

Scherrie McNutt, for what it is worth, *was* similarly situated to Williams. Like Williams, she obstructed justice and caused more than $200,000 in loss. *See* U.S.S.G. §§ 2B1.1, 3C1.1. And like Williams, she received an 18-month prison sentence.

Williams insists that her sentence implicates a national sentencing disparity. In 2016, she points out, only 43% of fraud defendants received prison sentences within the guidelines range, with most of the rest (presumably) receiving below-guidelines sentences. Even taking that statistic at face value, a district court does not abuse its discretion by imposing the same type of sentence given to nearly half of the defendants in the same offense category.

Williams adds that the district court placed too much weight on one factor, the advisory guidelines range under § 3553(a)(4)(A). But she has no support for that theory. While the trial court's analysis began with the guidelines range, it did not stop there. The court went on to discuss the nature of Williams' offense (§ 3553(a)(1)) and the need to reflect its seriousness (§ 3553(a)(2)(A)), considering "the incalculable damage [that it caused] to the integrity of the tax system." R. 1217 at 13. It considered Williams' personal characteristics (§ 3553(a)(1)), praising her work ethic but refusing to accept her suggestion that she was duped into joining the conspiracy. It agreed to recommend educational training for Williams during her incarceration (§ 3553(a)(2)(D)). And it considered the need for restitution (§ 3553(a)(7)).

That is just what the district court was supposed to do and does not permit an inference that the district court placed undue reliance on the guidelines range. No abuse of discretion occurred.

For these reasons we affirm.